
# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4476 | **DATE** | **NOV – 2 2000** |
| **CASE TITLE** | | Delaney v. DeTella | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached Memorandum Opinion and Order, the defendants' motion for summary judgment [Doc. 30-1] is DENIED.

*[signature] David H. Coar*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | **4** number of notices |
| X | Notices mailed by judge's staff. | **NOV 06 2000** date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | *[initials]* docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | 11-2-00 date mailed notice |
| dc(lc) | courtroom deputy's initials | FILED FOR DOCKETING 00 NOV -3 PM 1:19 |
| | Date/time received in central Clerk's Office | *[initials]* mailing deputy initials |

Document Number **37**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLEN DELANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 98 C 4476 |
| v. | ) | |
| | ) | HONORABLE DAVID H. COAR |
| GEORGE DETELLA, GLENN MALONE, | ) | |
| CHRISTOPHER HUGHES, EUGENE | ) | |
| McADORY, CLARENCE WRIGHT, | ) | |
| DONALD BURNS,  and DAVID WALKER, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

NOV 0 6 2000

## MEMORANDUM OPINION AND ORDER

Glen Delaney ("Delaney") filed a § 1983 claim against Warden George DeTella and

Stateville Correctional Center officials Eugene McAdory, Glenn Malone, Christopher Hughes,

Donald Burns, David Walker, and Clarence Wright (collectively, "defendants") in their official

and individual capacities.  Delaney alleges that the conditions of his confinement at the Stateville

Correctional Center and in particular the denial of exercise opportunities during a six month

lockdown violated his Eighth Amendment rights.  Before the court is the defendants' motion for

summary judgement.  For the reasons discussed herein, the defendants' motion is denied.

# I. Factual Background[1]

At all times relevant to this case, Delaney was incarcerated in the segregation unit at the Stateville Correctional Center ("Stateville"). Defendant George DeTella ("DeTella") served as the Warden at Stateville. Eugene McAdory ("McAdory") was the Unit Manager of Unit I, where Delaney was housed. Glenn Malone ("Malone") and Christopher Hughes ("Hughes") were the Correctional Captains at Stateville. Donald Burns ("Burns"), David Walker ("Walker"), and Clarence Wright[2] ("Wright") were Correctional Lieutenants. Delaney was placed in disciplinary segregation as a result of assault charges brought against him by staff and inmates at Stateville and at Pontiac Correctional Center, where Delaney was housed prior to his confinement at Stateville. Delaney is not scheduled to be released from segregation until the year 2003.

This action challenges the conditions of Delaney's confinement during a lockdown instituted at Stateville. Institutional lockdown of varying lengths have been imposed at Stateville in an effort to maintain the security of the facility, protect inmates and staff, facilitate searches for drugs, weapons, or other contraband, and investigate serious incidents. On April 18, 1996, Stateville was placed on lockdown to conduct an extensive shakedown of the institution and to

---

[1] Local Rule 56.1 requires parties to support each statement of material fact or response thereto with a specific citation to the record. The defendants' response to Delaney's Local Rule 56.1(b) statement failed to include a single citation. To the extent that plaintiff's 56.1(b) statements are supported by the record and insufficiently controverted by the defendants, those assertions will be deemed admitted. See LR 56.1(a); Thomas v. Ramos, 918 F. Supp. 228, 229 (N.D. Ill. 1996) (citing Wienco, Inc. v. Katahn Assocs., Inc., 965 F.2d 565, 568 (7th Cir. 1992)) (granting motion to strike). Where Delaney's statements are refuted by a well-supported statement proffered in the defendant's Local Rule 56.1(a) statement, the plaintiff's statements will be deemed controverted.

[2] Wright was promoted to Lieutenant on September 1, 1996. From April 1, 1993, through August 31, 1996, Wright was a Correctional Sergeant at Stateville.

implement security measures including new inmate movement procedures and patterns within the facility. During this particular lockdown period, inmate living units were redesigned. Inmates were not afforded out-of-cell recreation during the lockdown. A gradual reinstatement of inmate movement and programming commenced on October 28, 1996.

Normally, Stateville inmates had yard privileges pursuant to a provision of the Stateville Institutional Directive, which read in pertinent part:

> Inmates who have been housed in segregation less than 90 days will be afforded a minimum of one hour of recreational activity outside their cells per week. Recreational activity will be noted in a log. Five hours of recreational yard time shall be available to all inmates who have served a minimum of 90 days in segregation status in compliance with the Davenport Consent Decree.

Stateville Institutional Directive 05.04.000K3 at II.C.9. Before and after the lockdown period, Delaney was not placed on any yard restrictions. Rather, he was afforded a weekly five hour out-of-cell exercise period. During the six month[3] lockdown period, however, all Stateville inmates were confined to their cells and their yard privileges taken away.

Delaney's movement during the lockdown period was limited to the opportunity to shower once per week, a couple of visits to the Health Care Unit,[4] and three visits from family members or friends in April, May and July of 1996. Each time Delaney left his cell for medical and family visits, his wrists were shackled together to his waist, and a loop connected him to the

---

[3] The parties do not dispute that the lockdown took place between April 18, 1996 and October 28, 1996. By the court's calculations, that period encompasses 194 days, but the plaintiff refers to 166 days as the duration of the lockdown. For the sake of simplicity, the court will consider the lockdown period to have been roughly six months.

[4] On thirteen separate occasions, Delaney was attended to by medical technicians in the living unit where the inmates were housed. Once or twice, he was escorted to the Health Care Unit for further medical attention.

prisoners in front and in back of him. The walk to the medical and visiting facilities took about five to ten minutes.

During the lockdown, inmates were able to work out in their cells by doing sit-ups and push-ups in the open area of the cell, which measured approximately 122 inches long and 43 to 56 inches wide. Delaney did not engage in any exercises in his cell. When asked why he did not exercise in his cell, Delaney cited frustration and depression. Delaney also noted that he had a television in his cell, which, in his words, made him "more of a couch potato." Delaney is unsure of whether he suffered any significant weight changes during the lockdown period.

On several occasions throughout the lockdown period, Delaney spoke to McAdory, Malone, Hughes, Walker, Burns, and Wright getting regarding access to out-of-cell exercise periods. On August 14, 1996, Delaney prepared a grievance regarding the same matter. The grievance officer denied Delaney's grievance. Subsequently, Warden DeTella reviewed Delaney's grievance and concurred with the grievance officer's denial.

## II. Standard of Review

Summary judgment will be granted if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986). The moving party bears the burden of showing, through depositions, answers to interrogatories, and affidavits on record, that there is an absence of a genuine issue of material fact. Spreen v. Brey, 961 F.2d 109, 111 (7th Cir. 1992); Fed. R. Civ. P. 56(c). To defeat summary judgment, the nonmoving party must set forth evidence sufficient to allow a jury to render a judgment in its

favor.  <u>Donovan v. City of Milwaukee</u>, 17 F.3d 944, 947 (7th Cir. 1994); <u>Thomas v. Ramos</u>, 918

F. Supp. 228, 231 (N.D. Ill. 1996) (citing <u>Williams v. Ramos</u>, 71 F.3d at 1246, 1248 (7th Cir.

1995)).  The court will review the facts and draw all reasonable inferences in the light most

favorable to the nonmoving party.  <u>Donovan,</u> 17 F.3d at 947.


### III. Analysis

Delaney challenges the constitutionality of the conditions of his confinement during a six

month lockdown at Stateville.  Delaney claims that defendants deprived him of out-of-cell

exercise during the lockdown in violation of his Eighth Amendment right to be free from cruel

and unusual punishment.  The defendants advance three arguments in favor of summary

judgment.  First, the defendants invoke the shield of qualified immunity.  Defendants also

contend that the lockdown posed a legitimate penological reason for the exercise restriction, thus

alleviating Eight Amendment concerns.  In addition, defendants McAdory, Malone, Hughes,

Burns, Walker and Wright claim that they were not personally involved in the decision to restrict

exercise privileges and urge dismissal of the claims against them.  The defendants' motion is

denied for the reasons discussed below.


A.  Qualified Immunity

The defendants seek dismissal of the suit against them in their individual capacities under

the doctrine of qualified immunity.[5]  As a general rule, government officials carrying out

---

[5] Delaney's official capacity claims are unaffected by the assertion of qualified immunity
because the defense only encompasses claims for monetary relief against officials in their

executive and administrative functions are immune from defending themselves in a legal action. Mitchell v. Rice, 954 F.2d 187, 190 (4th Cir. 1992).  Government officials acting within the scope of their authority are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

Accordingly, the defendants are shielded from civil liability if (1) the facts, viewed in a light most favorable to the plaintiff, do not make out a constitutional violation; or (2) the asserted rights were not "clearly established" at the time the alleged deprivation occurred.[6] Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 472 (7th Cir. 1997); Donovan, 17 F.3d at 947; Thomas, 918 F. Supp. at 234 (citing Sherman v. Four County Counseling Center, 987 F.2d 397, 410 (7th Cir. 1993)).  The test for qualified immunity turns on the "objective legal reasonableness" of the official's conduct and protects "all but the plainly incompetent or those who knowingly violate the law." 1B Schwartz & Kirklin, supra, at § 9.14 (quoting Harlow, 457

---

individual capacities. 1B Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation § 9.14 (3d Ed.).

[6] The Seventh Circuit has also set forth the test for qualified immunity as follows: First, the plaintiff must show that the law was clearly established when the challenged conduct occurred.  In this Circuit, we ask "whether the law was clear in relation to the specific facts confronting the public official when he or she acted."  Second, we evaluate the objective legal reasonableness of the defendants' conduct.  We inquire whether reasonably competent officials would agree on the application of the clearly established right to a given set of facts.

McDonnell v. Cournia, 990 F.2d 963, 968 (7th Cir. 1993).  Although the two tests seemingly use different approaches to the qualified immunity analysis, they are, in fact, consistent.  The formulation quoted above guides the courts in their inquiry into whether the asserted right was clearly established. Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 472 (7th Cir. 1997).

U.S. at 818, 102 S. Ct. at 2738; <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.C. 1092, 1096, 89

L.Ed.2d 271 (1986)).  In assessing the applicability of qualified immunity to this case, the court

will examine whether Delaney has set forth a constitutional violation.  Then the court will

determine whether the right asserted by Delaney was clearly established at the time of the alleged

violation.


### 1.  Eighth Amendment Violation

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton

infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate

was imprisoned, or are totally without penological justification." <u>Caldwell v. Miller</u>, 790 F.2d

789, 600 (7th Cir. 1986).  A prison's conditions are sufficiently severe within the meaning of the

Eight Amendment where they fall beneath "the minimal civilized measure of life's necessities."

<u>Rodgers v. Jabe</u>, 43 F.3d 1082, 1086 (6th Cir. 1995) (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337,

347, 101 S. Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)).  As society's standard of living rises, the

standard of minimum decency of prison conditions rises accordingly.  <u>Davenport v. DeRobertis</u>,

844 F.2d 1310, 1315 (7th Cir. 1988).  Conditions of confinement should be examined to

determine whether they are compatible with the "evolving standard[ ] of decency that mark[s] the

progress of a maturing society." <u>Caldwell</u>, 790 F.2d at 600.

In reviewing the case law, the court finds that Delaney has asserted a constitutional

violation.  The denial of exercise may rise to a constitutional violation in "extreme and prolonged

situations where movement is denied to the point that the inmates' [physical or psychological]

health is threatened." <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1432 (7th Cir. 1995).  <u>See also</u> <u>French</u>

-7-

v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1988) ("Where movement is denied and muscles allowed to atrophy, the health of the individual is threatened and the state's constitutional obligation is compromised.") The length of time during which Delaney was denied exercise and the limited movement allowed him as an alternative to out-of-cell exercise presents a cognizable claim despite the penological justification proffered by the defendants.

This circuit has approved total restrictions on exercise outside of a prisoner's cell, but only when such limitations have been short-lived. See Davenport, 844 F.2d at 1315 (observing that less exercise opportunities are required where the period of incarceration is brief); Harris v. Fleming, 839 F.2d 1232, 1236 (7th Cir. 1988) (28 day denial of out-of-cell exercise); Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1089 (7th Cir. 1986) (stating that limited recreational activities are sufficient where the average stay in prison relatively short). Likewise, the courts have cited with approval instances in which inmates have had access to alternative indoor exercise facilities, provided that the denial of yard privileges is for a brief period. See, e.g., Shelby, 798 F.2d at 1089 (holding that inmates had sufficient recreational opportunities where, although no formal recreational program, average length of incarceration was 10 days and prisoners had access to bikes in bullpen area and could congregate with other inmates to read and play board games); Harris, 839 F.2d 1236 (inmate could have exercised in his cell or roamed the unit during four week restriction).

Perhaps in reliance on the above cited case, the defendants contend that Delaney received adequate out-of-cell exposure because he was allowed to shower once a week and, on a handful of occasions throughout the six month period, he visited with friends and family or sought treatment at the health clinic. Moreover, the defendants assert, Delaney could have exercised in

his cell. This extremely limited movement, however, is inadequate when coupled with the long duration of the exercise prohibition.

Delaney was confined to his cell, without any opportunities for out-of-cell exercise, for a period of roughly six months. Where the term of confinement is lengthy, as in the present case, the case law suggests that prison officials must provide inmates with substantive exercise opportunities. See, e.g., Davenport, 844 F.2d at 1315 (upholding injunction requiring five hours of weekly exercise for prisoners confined for more than 90 days in segregation and discussing cases in support of this threshold); Allen v. Sakai, 40 F.3d 1001, 1004 (9th Cir. 1994) (finding clearly established right to exercise privileges where prisoner subject to "indefinite and potentially long-term" incarceration); Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (affirming district court's order requiring five hours of exercise per week where prisoners confined for more than four years). See also Antonelli, 81 F.3d at 1432 (deeming complaint sufficient where prisoner alleged that he was confined to small cell with no room to exercise for periods of up to seven weeks); Morissette v. DeTella, No. 96 C 6798, 1997 WL 619851, at *3 (N.D. Ill. Sep. 29, 1997) (finding viable claim for deprivation of exercise where prisoner unable to exercise outside 6'x9' cell for 139 days).

Here, the defendants concede that Delaney was not afforded any out-of-cell exercise. The limited outings afforded to Delaney (namely, the weekly showers and the handful of family and medical visits) and the opportunity to exercise within his cell do not alleviate the constitutional concerns presented by this case. In Davenport, which involved the segregation unit at Stateville, the court acknowledged that

the cells in I-House [where, coincidentally, Delaney was housed] are large enough for an inmate to engage in various forms of exercise, including push-ups, sit-ups, step-ups, and running in place. It is also true that the inmates are allowed to leave their cells for a variety of reasons, such as to use the law library, see visitors, consult with lawyers and other counselors and visit the medical unit. But these excursions consume in the aggregate only two to three hours per week on average, and the degree of constraint is considerable.

844 F.2d at 1313. Rejecting the defendant's contention that the infrequent outings were adequate, the court affirmed the district court's injunction requiring at least five hours a week of exercise for Stateville inmates who were confined for more than ninety days. 844 F.2d at 1315-16.

Davenport suggests that where the exercise restriction is prolonged, a meaningful substitute for recreation and exercise must be afforded to inmates.[7] The availability of in-cell exercise does not render constitutional the denial of out-of-cell exercise, at least where the exercise restriction is lengthy. Thus, whether Delaney was able to exercise in his cell is beside the point. Likewise, the sporadic personal and medical visits, which gave Delaney a handful of hours, at best, outside of his cell over the course of six months, were inadequate. Even when Delaney was permitted to leave his cell, he was constrained by chains joining him to inmates in

---

[7] The court need not designate a specific number of hours of exercise that must be afforded to inmates to meet the constitutional minimum. In fact, the courts have been averse to delineating a bright line rule. Davenport, 844 F.2d at 1316 ("We do not suggest that [a five hour per week requirement] is always and everywhere the constitutional minimum."); Rodgers, 43 F.3d at 1086-87 (noting that the Sixth Circuit has not endorsed a constitutional minimum). Nor is this court presented with the question of whether an outdoor exercise area is necessary or whether an indoor exercise facility is adequate for purposes of a constitutional challenge. The court need only decide whether the denial of out-of-cell exercise for a six month period during a lockdown constitutes a claim for cruel punishment within the meaning of the Eighth Amendment. Because of the absolute nature of the exercise deprivation and its protracted duration, the court concludes that Delaney has set forth a cognizable claim.

front and in back. What sets this case apart from others in which the exercise restrictions have been upheld as constitutional is the length of the deprivation. Because a six month denial of exercise heavily burdens Eighth Amendment rights, the allowance of such curtailed movement does not pass constitutional muster.

Of course, inmates have been denied exercise for longer durations. Such limitations, however, are permissible only if mitigating circumstances are present. See Rodgers, 43 F.3d at 1086 (citing Patterson v. Mintzes, 717 F.2d 284, 289 (6th Cir. 1983)) (listing the size of cell, opportunity for contact with other inmates, time expended outside the cell, penological justifications, physical and psychological injuries, and a particularized need for exercise as relevant considerations). A penological reason can justify a prolonged denial of exercise. See generally Anderson v. Romero, 72 F.3d 518, 527 (7th Cir. 1995) (observing that the withholding of exercise constitutes an Eighth Amendment violation unless acute security risk posed by allowing prisoner out of his cell); Rodgers, 43 F.3d at 1086 (recognizing that total deprivations of exercise fail to comport with Eighth Amendment except where penological justifications exist).

By proffering a penological justification, the defendants expect to innoculate themselves from constitutional scrutiny. Such absolutism is misguided. Indeed, where there has been a particularized security risk, the courts have permitted even long-term denials of exercise. See, e.g., Rodgers, 43 F.3d at 1088 (holding that as of 1991, the unconstitutionality of using exercise restriction as a punitive sanction for a prisoner's misconduct not clearly established); LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993) (finding no Eighth Amendment violation where prisoner denied out-of-cell exercise for 5 years because inmate posed constant threat of attack);

Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988) (per curiam) (affirming prisoner's three month solitary confinement without outdoor exercise where prisoner posed security risk for prior escape from jail); Davenport, 844 F.2d at 1315 ("The exception for fractious inmates protects the defendant's legitimate interest in security"); Thomas, 918 F. Supp. at 235 (no violation of clearly established constitutional right where prisoner precluded from yard access for 70 days while subject to disciplinary segregation).

Unlike the cases in which prisoners posed grave security risks, Delaney did not present a security risk. Delaney was initially subject to segregation because he had a history of disciplinary infractions with staff and other prisoners. Even during his term of segregation, however, Delaney was allowed to exercise outside of his cell. Only after the lockdown was Delaney placed on exercise restrictions. Thus, Delaney's prior misconduct did not serve as a justification for his loss of exercise privileges. See Allen, 40 F.3d at 1004 (finding inapplicable security risk justification where, although prisoner subject to disciplinary segregation, loss of exercise privileges not based on determination of security risk).

The defendants do not hold out a particularized security risk as a justification for the exercise limitations imposed on Delaney. Rather, they cite to the lockdown. Keeping the inmates, including Delaney, confined to their cells was necessary to implement security measures, argue the defendants. This explanation, however legitimate, does not excuse a total and protracted prohibition on exercise outside of the cell. Rather, the case law suggests that although penological justifications may justify more extensive restrictions, they do not shield prison officials from constitutional scrutiny.

-12-

In <u>Spain</u>, the state proffered generalized security arguments for withholding exercise from inmates. 600 F.2d at 200. The policy of denying out-of-cell exercise, argued the state, not only protected the prison staff from violent attacks by the plaintiff inmates, but also served to protect the plaintiffs from other inmates. <u>Id.</u> In addition, the state cited the reduced risk of escape. <u>Id.</u> Rejecting the tendered explanations, the court demanded that alternative exercise arrangements be made for the prisoners. <u>Id.</u> Thus, when the Eighth Amendment challenge involves a protracted exercise restriction, the assertion of a generalized penological justification does not shield the defendants from liability. In accordance with the <u>Spain</u> decision, the defendants must do more than merely articulate a penological reason for the deprivation of exercise, they must demonstrate the infeasibility of alternative exercise opportunities. <u>Mitchell</u>, 954 F.2d at 192 (requiring showing a infeasibility of alternatives before granting qualified immunity).

The record presented does not persuade the court that meaningful exercise and recreational opportunities were absolutely foreclosed by the lockdown. The defendants state that Stateville was placed on lockdown "to conduct an extensive shakedown of the entire institution and to implement security measures including new inmate movement procedures and patterns within the facility." Def. LR 56.1(a) Stmt. ¶ 16. Defendants add that allowing inmates out-of-cell recreation posed a "potential security threat." <u>Id.</u> at ¶ 17. Despite the generalized statements proffered by the defendants, it is not evident that the allowance of out-of-cell exercise during the six month lockdown was inconsistent with the maintenance of security or the implementation of new movement patterns. A more detailed and concrete explanation may be all that is required from the defendants. On this record, however, the court is not persuaded that exercise alternatives could not be provided, even if such efforts entailed, for example, solitary supervised

-13-

exercise periods. <u>See</u> <u>Williams v. Greifinger</u>, 97 F.3d 699, 706 (2d Cir. 1996) (suggesting that the inmate could have exercised alone and rejecting argument that such an arrangement would be too costly); <u>Spain</u>, 600 F.2d at 200 ("The cost or convenience of providing adequate facilities is not a defense to the imposition of cruel and unusual punishment.")

This court does not hold that every exercise restriction must be coupled with an infeasibility showing. In fact, courts in this district have permitted exercise restrictions arising from lockdown without such a showing. In those cases, however, the lockdown were reasonably brief in duration, or, if prolonged, the exercise restrictions allowed prisoners the freedom to move about the facilities. <u>See, e.g.</u>, <u>Stewart v. McGinnis</u>, 800 F. Supp. 604, 616 (N.D. Ill. 1992) (finding no Eight Amendment violation where prisoner allowed to leave cells to visit other cells and mingle in the day room during 85 day lockdown); <u>Williams v. DeTella</u>, 95 C 603884, 1997 WL 6043884, at *5 (N.D. Ill. Sep. 23, 1997) ("While limiting segregation inmates to one exercise period per week is probably permissible, to deny them that minimum when the institution is on lockdown could result in their having no opportunity to exercise for months.") The instant case, in contrast, encompassed a longer period in which the prisoner was not permitted any movement outside the cell, with the exception of occasional medical and personal trips, which this court found to be wanting.

The injury resulting from the exercise restriction was so grave, asserts Delaney, that he suffered from depression as a result. This alleged psychological harm is sufficient to sustain Delaney's claim. <u>See</u> <u>Davenport</u>, 844 F.2d at 1313. In light of the lengthiness of the Stateville lockdown, the Eighth Amendment would require some alternate arrangement to be made wherein inmates could have access to exercise or recreational facilities. Delaney was denied all exercise

-14-

opportunities for nearly six months. Even during a lockdown, the court finds that total

deprivation for this protracted period falls below the constitutional threshold. In sum, the record

in this case, when viewed in a light most favorable to the plaintiff, makes out a constitutional

violation.


## 2. Clearly Established Law

To defeat the defendants' claim of qualified immunity, Delaney also bears the burden of

articulating a clearly established constitutional right allegedly violated by the defendants at the

time of their misconduct. Donovan, 17 F.3d at 951. This inquiry asks whether "a reasonable [ ]

officer could have believed [the challenged conduct] was constitutional in light of the clearly

established law and information he possessed at the time." Lanigan, 110 F.3d at 472. A right

must be clearly established in a particularized sense. Donovan, 17 F.3d at 951. Put differently,

while the very action under scrutiny need not have been held unlawful at the time of the alleged

violation, the "contours of the right must have been established so that the unlawfulness of the

defendants' conduct would have been apparent in light of existing law." Cleveland-Perdue v.

Brutsche, 881 F.2d 427, 429 (7th Cir. 1989) (citing Anderson v. Creighton, 483 U.S. 635, 639-

40, 107 S. Ct. 3034, 3038-39, 97 L. Ed. 2d 523 (1987)).

In ascertaining whether a right is clearly established, the court is not limited to

considering only precedent from the Supreme Court or this circuit. Donovan, 17 F.3d at 952.

Decisions from other circuits are authoritative insofar as they reflect the state of the law at the

time of the alleged misconduct. Spreen, 961 F.2d at 113. In the absence of controlling authority,

the court must "determine whether there was such a clear trend in the case law that [it can be

said] with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." Id. (quoting Cleveland-Perdue, 881 F.2d at 431). This approach precludes an official from escaping liability for unlawful conduct due to the fortuity that a court in a particular jurisdiction had not yet addressed the issue. 881 F.2d at 431. The plaintiff must present case law in a closely analogous case such that this court may conclude therefrom that a reasonable diligent government official would have known of the case law, related it to the situation at hand, and molded his conduct accordingly. Donovan, 17 F.3d at 952 (citing Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir. 1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L.Ed.2d 795 (1986)).

In view of the case law, the court concludes that the defendants are not entitled to qualified immunity. As discussed above, the "contours of the [plaintiff's Eighth Amendment] right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. at 640, 107 S. Ct. at 3039. To briefly summarize, the case law in 1996 firmly established that prisoners had a constitutional right to exercise. By 1996, the Seventh Circuit had explicitly announced that "[l]ack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmates' health is threatened." Antonelli, 81 F.3d at 1432; Shelby County, 798 F.2d at 1089 (citing French, 777 F.2d at 1255). See also Greifinger, 97 F.3d at 704-06 (2d Cir. 1996) (concluding that the right to exercise clearly established by 1996 and discussing cases); Mitchell, 954 F.2d at 193 (stating that the law "clearly establish[ed] that depriving inmates of all meaningful opportunities to exercise generally violates the Eighth Amendment prohibitions against cruel and unusual punishment."); Spain, 600 F.2d at 199 (observing that there is

-16-

"substantial agreement among cases in this area" that regular exercise opportunities are constitutionally required).

A brief exercise restriction may pass constitutional muster. <u>Shelby</u>, 798 F.2d at 1089 (stating that limited recreational activities are sufficient where the average stay in prison relatively short). A longer restriction supported by a particularized showing of danger may also be constitutionally adequate. <u>Caldwell</u>, 790 F.2d at 601 ("The Constitution does not mandate that prisons be comfortable, and a prison . . . which houses persons convicted of serious crimes and who have demonstrated a propensity to violence or escape cannot be free of discomfort") (internal citations omitted). Delaney, however, was denied exercise for six months, which placed a substantial burden on his Eighth Amendment rights. Moreover, the defendants have not articulated any particularized security concerns with respect to Delaney that would excuse the prolonged deprivation. Absent such mitigating factors, the law provided inmates with a right to meaningful exercise opportunities. <u>Davenport</u>, 844 F.2d at 1315-16 (upholding district court injunction requiring substantive exercise for inmates confined for long durations).

The courts have suggested that an inmates' Eighth Amendment rights may be more heavily burdened in exigent circumstances. <u>Anderson</u>, 72 F.3d at 527 ("To deny a prisoner all opportunity for exercise outside his cell would, the cases suggest, violate the Eighth Amendment unless the prisoner posed an acute security risk if allowed out of his cell for even a short time"); <u>Mitchell</u>, 954 F.2d at 192 (noting that "the courts concede that penological consideration may, in certain circumstances, justify [exercise] restrictions"). The law, however, did not support the imposition of an extended and total deprivation of exercise even during a lockdown. The <u>Spain</u> court rejected the state's generalized argument that the denial of exercise was necessary to

-17-

maintain security. 600 F.2d at 199-200. Segregation of inmates might be required, the court

reasoned, but that did not explain why other exercise arrangement were not made. Id. at 200.

Drawing from Spain, the Mitchell court concluded that "based on the ample case law, a

reasonable prison official should have known that in most circumstances withholding all exercise

opportunities from a prisoner over an extended period of time violates the Eighth Amendment."

954 F.2d at 192. In thus holding, the Mitchell court declined to grant qualified immunity to the

defendant prison officials without a showing of infeasibility of alternatives. Id. at 192-93.

In light of the clearly established law and the information possessed by the defendants,

reasonable officials could not have believed that a six month denial of exercise, even during a

lockdown, was lawful. See Hammond v. Kunard, 148 F.3d 692, 696 (7th Cir. 1998). No rule of

law permitted a total constriction of Eighth Amendment rights based on a lockdown. Instead, the

law established that Delaney had a right to be free from prolonged and restrictive exercise

deprivations. In fact, the Stateville Institutional Directive required that:

> Inmates who have been housed in segregation less than 90 days will be afforded a
> minimum of one hour of recreational activity outside their cells per week. Recreational
> activity will be noted in a log. Five hours of recreational yard time shall be available to
> all inmates who have served a minimum of 90 days in segregation status in compliance
> with the Davenport Consent Decree.

Stateville Institutional Directive 05.04.000K3 at II.C.9. This policy put defendants on notice of

Delaney's right to exercise. See Hammond, 148 F.3d at 697-98 (concluding that "no reasonable

officers, knowing what the defendants are alleged to have known, could have believed that they

were acting in accordance with [the plaintiff's] clearly established constitutional rights"). Both

the consent decree and the case law prohibited prolonged and severe denials of exercise. No

exception was made for lockdown. Thus, no reasonably competent official would have believed

-18-

that withholding out-of-cell exercise for six months even during a lockdown was constitutionally justified.

Though in agreement about the constitutional viability of the right to exercise, the Seventh Circuit in particular and the circuit courts in general have declined to adopt a per se rule that the denial of out-of-cell exercise constitutes cruel and unusual punishment. Mitchell, 954 F.2d at 191-92 (stating that, as a general rule, a prisoner should be permitted regular out-of-cell exercise); Davenport, 844 F.2d at 1315 (noting that judicial decisions on prisoners' exercise rights are fact-specific). Likewise, the courts have refrained from drawing a bright line with respect to the number of hours of exercise that prisoners must be afforded. Rodgers, 43 F.3d at 1087; Harris, 839 F.2d at 1236. This does not mean, however, that the right alleged to have been violated in this case was not clearly established. In light of the abundant authority, reasonable officials would have been on notice that prohibiting out-of-cell exercise during a six month period lockdown was unconstitutional.


## B. Defendants' Personal Involvement

In their final argument in support of summary judgment, defendants McAdory, Malone, Hughes, Burns, Walker and Wight maintain that they must be dismissed from the case because they were not personally involved in the alleged violation.

The theory of respondeat superior does not apply to constitutional claims. Antonelli, 81 F.3d at 1428 Thus, the defendant must have actually participated in the constitutional wrongdoing to be subject to liability. Id. When a prisoner complains of localized, nonsystematic violations, the warden and senior prison officials cannot be said to have directly participated in

the allegedly wrong decisions.  Id. at 1428-29.  On the other hand, those upper tier officials can

be deemed to have participated in systematic violations.  Id. at 1429.

Here, the lockdown was a large scale policy such that the warden and upper level officials

can be said to have personally participated in the alleged violation.  See Antonelli, 81 F.3d at

1428 (imputing liability to sheriff and director of corrections because claim regarding lack of

exercise deemed systematic in nature); Williams, 1997 WL 603884, at *2 (where prisoner

complained of pervasive long-term conditions within segregation unit, superintendent

responsible for unit "was hardly remote from the day-to-day decisions that affected inmates in

it").

With respect to the lower-level officials, those defendants' blanket assertion that they

were not personally involved in the alleged violation is insufficient to warrant summary

judgment.  The defendants could have outlined the chain of command, noting the responsibilities

and limitations of power for each named defendant, thereby enabling the court to determine

whether each defendant can be deemed an active participant in the alleged violation.  However,

the bare denials proffered by the defendants do not establish that defendants are entitled to

judgment as a matter of law.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is denied.

Enter:

David H. Coar

**United States District Judge**

Dated: NOV - 2 2000