# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4476 | **DATE** | 3/10/2004 |
| **CASE TITLE** | Glen Delaney vs. George DeTella | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for a Mistrial

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's Motion for a Mistrial [Doc. 68] is denied. Any other motions are moot and terminated. This case is closed.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLEN DELANEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 98 C 4476 |
| v. ) | |
| ) | HONORABLE DAVID H. COAR |
| GEORGE DETELLA ) | |
| ) | |
| ) | DOCKETED |
| ) | |
| Defendant. ) | MAR 11 2004 |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on pro se Plaintiff Glen Delaney's post-trial motion for a new trial. The motion is styled as a Rule 58 Motion, but it is more properly characterized as a Rule 59 Motion.[1] For the reasons set forth below, Plaintiff's Motion is denied.

### FACTUAL & PROCEDURAL BACKGROUND

In July 1998, Plaintiff Glen Delaney ("Plaintiff" or "Delaney") filed a pro se complaint under Section 1983, 42 U.S.C. §1983, alleging that the conditions of his incarceration at Stateville Correctional Center violated his rights under the Eighth Amendment. Specifically, Plaintiff's Complaint alleged that he was denied all opportunities for out-of-cell exercise during a period of segregation confinement between April and October of 1996. In February 2000, the Court, on its own motion, appointed Edward Keidan to serve as Plaintiff's attorney in this case.

---

[1]Plaintiff recognized that Rule 58 might not be the appropriate rule under which to seek relief in his motion and, if so, Plaintiff requested the Court to apply Rule 59. (Pl. Mot. at 15) The Court will do so.

1

Later in 2000, the Defendants moved for summary judgment on Plaintiff's complaint. Among the grounds they asserted for summary judgment was the defense of qualified immunity. This Court denied the summary judgment motion in all respects on November 2, 2000. The Defendants took an interlocutory appeal on the qualified immunity issue. On appeal, the Seventh Circuit affirmed the denial of summary judgment on the issue of qualified immunity. See Delaney v. DeTella, 256 F.3d 679 (7th Cir. 2001). In so doing, the Seventh Circuit noted that "it may very well be that the defendant guards have no liability here because they did not establish the lockdown. If they had no discretion, then . . . only Warden DeTella is a proper defendant." Id. at 687.

The Plaintiff proceeded to a jury trial on his Complaint in January 2003. At the close of trial, the Court granted Defendant's Motion for a Directed Verdict against all the Defendants except the Warden. The evidence conclusively demonstrated that the Defendant prison guards lacked the discretion to alter the institutional lockdown that led to Plaintiff's deprival of out-of-cell exercise. The jury returned a verdict in favor of the remaining Defendant, Warden DeTella.

Plaintiff, acting pro se, filed a post-trial motion for a new trial. The Court will treat the motion as a Rule 59 motion for a new trial.

## DISCUSSION

Federal Rule of Civil Procedure 59 permits a party to file a Motion for New Trial within ten days of the judgment. Fed. R. Civ. Pro. 59(a),(b). The party seeking relief under Rule 59(a) must show either that the jury's verdict was "contrary to the manifest weight of the evidence," Cefalu v. Village of Elk Grove, 211 F.3d 416, 424 (7th Cir. 2000), or that the court committed a manifest error of law that rendered the trial unfair to the moving party, see Mid-America

2

Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1367 (7th Cir. 1996).

Plaintiff recites a litany of objections in support of his motion for a new trial. Plaintiff asserts that: (1) he was provided with inadequate legal representation; (2) prejudicial errors occurred during jury selection; (3) the Court made erroneous evidentiary rulings during trial; (4) the Court erred in overruling Plaintiff's objection relating to the presence of officers in the Courtroom; (5) the Court erred in its jury instructions; and (6) the Court erred when it granted a directed verdict to all Defendants except the Warden. The Court will address Plaintiff's objections here.

### 1. Inadequate Legal Representation

Plaintiff's motion registers multiple complaints about the conduct and ability of Plaintiff's appointed attorney. "Civil litigants do not have a right, either constitutional or statutory, to counsel." Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir. 1995) (citing Jackson v. County of McLean, 953 F.2d 1070, 1071 (7th Cir. 1992)). Under 28 U.S.C. § 1915(e), this Court is endowed with discretion to appoint counsel in cases where it would serve the interests of justice to do so.

Alleged failures of appointed counsel would only be grounds for a new trial if the failures were so abject as to render the trial fundamentally unfair to the moving party. Counsel's alleged failures in this case did not rise to that Himalayan height. Plaintiff may seek relief for the failures of his counsel through a separate lawsuit for malpractice or for breach of fiduciary duty, but counsel's alleged failures are not good grounds for a new trial. See Geder v. Godinez, 221 F.3d 1338 (Table), 2000 WL 874804, at *2 (7th Cir. June 27, 2000) ("[the] sole avenue for his malpractice claim against his appointed counsel 'is a suit for malpractice or for breach of

fiduciary duty,' Bell v. Eastman Kodak Co., No. 98-4142, 2000 WL 680353, at *3 (7 th Cir. May 25, 2000)."

The portion of Plaintiff's Motion addressing the alleged failings of his appointed counsel is peppered with language that could sound of judicial fraud or misconduct. For example, he asserts that his counsel provided inadequate assistance "under the direct guidance, assistance and aid of the Judge." (Pl. Mot. at 2). After appointing an attorney to represent the Plaintiff in this civil case, the Court took no part in Plaintiff's representation. The Court was (and remains) unaware of any undertakings that the Plaintiff's attorney may have performed on Plaintiff's behalf other than the events transpiring in open court. To the extent that Plaintiff's motion asserts a claim of judicial fraud or misconduct, it is utterly without foundation. This Court conducted Plaintiff's jury trial fairly and without bias towards any party.

### 2. Jury Selection Errors

Plaintiff's Motion asserts that the following legal errors occurred during jury selection: 1) failure to select alternate jurors; 2) jury selection procedure was unfair; and 3) juror Cummins was unable to be fair and impartial. None of these allegations present grounds for a new trial.

As to the first alleged error, alternate jurors are not required in civil or criminal cases. Rule 48 of the Federal Rules of Civil Procedure requires that juries be comprised of "not fewer than six and not more than twelve members." Fed. R. Civ. Pro. 48. This case was tried to a jury of eight. There was no legal or procedural error resulting from the selection of a jury without alternates.

As to the second alleged error, the jury selection procedure in Plaintiff's case was fair. The Court employed the same jury selection procedure that is used in every civil case in the

4

Northern District of Illinois. In this district, the jury department sends two lists of jurors to judges prior to jury selection. The list that the Court and the parties utilize contains the juror's names in alphabetical order. There is a second list, however, that contains the juror's names in a random order. This second list is not seen by the Court or by the parties until the voir dire and the challenges are complete. During jury selection in this case, as in almost every case, the Court asked a series of questions to each prospective juror. After the prospective jurors were questioned, the Court asked the attorneys whether there were other questions that they wanted the prospective jurors to answer. When the questioning was finished, the Court took up challenges for cause. After the challenges for cause were addressed, the parties were permitted to exercise their peremptory strikes. Once the parties completed their challenges (both for cause and peremptories), the Court selected the first eight jurors who remained from the randomized list. Nothing about this process is unfair to the Plaintiff.

The final alleged error in jury selection relates to juror Cummins. In response to questioning from the Court, Cummins testified that her son was a police officer. Plaintiff asserts that this fact undermined her ability to be fair and impartial in this case. Plaintiff's objection is groundless. In order to assert a juror bias claim, the Plaintiff must show either that the voir dire was inadequate to discover the source of the bias or that the juror was actually biased against him. The voir dire revealed the sole fact that Plaintiff cites as a source for alleged bias, so it cannot be inadequate in this case. Plaintiff has failed completely to establish any actual bias on the part of juror Cummins. During voir dire, she testified that her son's work in the police force did not affect her ability to be a fair and impartial juror in this case. Moreover, Plaintiff waived the ability to present an objection to juror Cummins when he did not challenge (either for cause

5

or peremptorily) her service on the jury.

### 3. Erroneous Evidentiary Rulings

Plaintiff's Motion describes the following two alleged errors in the Court's evidentiary rulings at trial: (1) unfair surprise in permitting the Defendants to introduce evidence of the consent decree that the parties entered into in Davenport v. DeRobertis, 83-C-4392 (N.D. Ill., Jan. 30, 1989) (slip op.); and (2) evidence about the initial reason for the institutional lockdown (the stabbing of a guard) at Stateville Correctional Center should have been excluded due to its prejudicial effect.

A new trial will only be granted based on erroneous evidentiary rulings if the moving party can demonstrate that the errors were "substantial enough to deny him a fair trial." Perry v. Larson, 794 F.2d 279, 285 (7th Cir. 1986). This Court finds that neither of these evidentiary rulings were erroneous. Although neither party included the Davenport v. DeRobertis consent decree on their exhibit lists, there can be no doubt that Plaintiff was personally familiar with the consent decree prior to trial: he mentioned it in his internal grievance about lack of exercise. Consequently, his claim of unfair surprise cannot stand. The Court, in its discretion, permitted the use of the consent decree at trial. As to the testimony about the initial cause of the institutional lockdown, Plaintiff asserts that it was unduly prejudicial and should have been excluded. The cause of the institutional lockdown was relevant to the Defendants' position that the lockdown justified Plaintiff's prolonged denial of out-of-cell exercise. Its probative value was not outweighed by the risk of prejudice to the Plaintiff from its admission. Although the Court does not detect an error in these rulings, even if either or both of these rulings were erroneous, the errors would not be substantial enough to require a new trial.

### 4. Presence of Officers in the Courtrooom

Plaintiff objects to the presence of officers in the Courtroom during his testimony. Specifically, he asserts that "the Judge told the escorting correctional officer to stand by the witness stand while plaintiff was testifying (as though plaintiff was going to jump out the witness booth and attack the jury)." (Pl. Rebuttal Motion at 13) Initially, Plaintiff misstates the facts. The Court took caution to guard against prejudice to the Plaintiff from his status as an inmate. Specifically, the Court had Plaintiff take the witness stand outside of the presence of the jury so that they would not see whether his hands or feet were shackled. At no time did the Court direct the escorting correctional officer to stand near the witness stand. The Court recalls that the escorting officer was standing against the wall approximately ten feet from the witness stand during Plaintiff's testimony. Plaintiff did register an objection to the officer's presence, and the objection was overruled. The Court detects no reversible error in these events.

### 5. Jury Instruction Errors

Plaintiff's Motion asserts that the following errors infected the jury instructions and require a new trial: (1) failure to read the jury instructions at the beginning of the trial; (2) Plaintiff was allegedly not in court while the instructions were read; (3) the impeachment by felony conviction instruction was improper in this case; and (4) the Court erred in its description of the claims. None of these alleged errors require a new trial.

The Court is not in the practice of giving the jury all the instructions at the beginning of trial. When the jury is empaneled, the Court gives such instructions on the nature of evidence and the nature of the case as will be necessary for the jury to understand their task. The Court is not required to give complete instructions at that point, nor is there any good reason to do so.

7

Giving complete instructions at the beginning of trial presents three significant risks. First, the jury is likely to be confused by legal instructions when they are not familiar with the facts of the case. Second, the jury could be tempted to begin deliberating prematurely if they had all the instructions at the outset. Third, events may (and often do) transpire during trial that requires a change in the content of the jury instructions. These risks outweigh any perceptible benefit in giving complete instructions at the beginning of trial.

Plaintiff's second alleged error with the instructions is that he claims he was not present in court while the instructions were being read. Plaintiff is incorrect. During all times that the jury was in the courtroom, the Plaintiff was in the courtroom. Because Plaintiff was incarcerated at the time of the trial, some level of coordination was required between the Court, counsel, and the U.S. Marshals Service (which controls incarcerated parties) to assure Plaintiff's presence for the proceedings. That being said, however, Plaintiff's allegations that any significant event during the proceedings occurred outside of his or his counsel's presence are meritless. The Court did not conduct any ex parte proceedings during this case. Plaintiff was either physically present or represented by his counsel at every critical stage of this trial.

Plaintiff's third alleged error relates to the jury instruction on impeachment by felony conviction. Plaintiff asserts that this instruction was improper and unnecessary on the facts of this case. The Court disagrees. This instruction is well-supported by the caselaw when a witness has been convicted of a felony. In a case like this one, the effect of the conviction on the credibility of the witness may be small, but the jury, as the finder of fact, is entitled to make that determination.

Plaintiff's final alleged error in the jury instructions relates to the claim description

instruction. Plaintiff asserts that the Court gave the wrong beginning date for his deprival of out-of-cell exercise and that the Court should not have instructed the jury that the Defendants contend that out-of-cell exercise was restored in September 1996. As to the first error, the Plaintiff is correct. Due to a clerical error, the Court instructed the jury that Plaintiff alleges he was deprived of out-of-cell exercise "from April 15, 1996 to October 28, 1996." The correct starting date for Plaintiff's deprivation was April 18, 1996, not April 15, 1996. The Court finds that this error is utterly harmless to Plaintiff. As to the Defendants' contention, the instruction accurately characterized their position about when the deprivation ended.

### 6. Directed Verdict in favor of the Defendant Prison Guards

Plaintiff asserts that the Court committed reversible error when it entered a directed verdict in favor of the defendant prison guards. As noted above, this case went to the Seventh Circuit on an interlocutory appeal on the subject of defendants' immunity. See Delaney v. DeTella, 256 F.3d 679 (7th Cir. 2001). The Seventh Circuit affirmed this court's determination that the defendants did not have qualified immunity from the violation in this case. It also noted that "it may very well be that the defendant guards have no liability here because they did not establish the lockdown. If they had no discretion, then . . . only Warden DeTella is a proper defendant." Id. at 687. The Defendants established through uncontroverted evidence at trial that the guards in fact had no discretion. Consequently, the Court entered a directed verdict in favor of the defendant guards. This was not error.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for a New Trial is denied.

**Enter:**

_David H. Coar_
**David H. Coar**
**United States District Judge**

**Dated: March 10, 2004**